SMITH *v.* THE BOARD OF GENERAL RETIREMENT SYSTEM
OF MERIDIAN.

No. 39616 April 18, 1955 79 So. 2d 447

May 16, 1955 80 So. 2d 46

*Nate S. Williamson, Lester F. Williamson,* Meridian, for appellant.

*Dunn & Singley,* Meridian, for appellee.

McGehee, C. J.

The appellant W. L. Smith was employed by the water department of the City of Meridian on June 19, 1937, and continued to work under such employment until February 5, 1951, when he suffered a heart attack, which is

shown to have occurred in the line of duty while he was undertaking to overhaul a feed water pump under the direction of the foreman in charge.

The General Municipal Employees' Retirement Act, Chapter 386, Laws of 1948, approved March 31, 1948, became effective in the City of Meridian on October 1, 1948, pursuant to the compliance on the part of the City with Sections 3652.3-04 and 3652.3-06, Code of 1942.

Section 3652.3-07, Code of 1942, states who the membership of the retirement system shall be composed of; and Par. (b) thereof provides: "All persons who are employees of the municipality, on the date fixed in the ordinance of the governing body for the retirement system to go into effect, who shall, either prior to or on the said effective date, notify the board in writing, by delivery both to the secretary of the board and to the clerk of the municipality, of his decision to become a member of the retirement system and either tender with said notice a sum equal to four per centum (4%) of his compensation received from the employer for the four (4) years immediately preceding said effective date or, in case of employees who have not been employed for as long as four (4) years, the sum shall be four per centum (4%) of the total compensation received by said employee, provided that in lieu of the tender of the money with the notice, the employee may offer, in said notice, to pay such sum in specified installments within three years of the said effective date; and provided, further, that the sum to be paid and the approval of installment payments shall be determined and approved by the board."

On August 18, 1948, the appellant filed an application with the Board of the General Retirement System of Meridian, the pertinent parts of which read as follows: "I wish to become a member of the General Municipal Employees' Retirement System. I agree to pay the sum of $331.50, which represents 4% of my annual salary for the past four years. Deduct equal monthly installments

from my salary for three years, beginning October 1, 1948."

Thus it will be seen that the appellant elected not to pay in cash at the time of his application the 4% of his compensation received from the employer for the 4 years immediately preceding the effective date of the Act on October 1, 1948, but in lieu of the tender of the money with his application he offered therein to pay such sum in specified installments within 3 years of the effective date of the Act. The monthly equal installments were deducted from his salary, beginning October 1, 1948, and continuing after he suffered his heart attack on February 5, 1951, until April 16, 1951, under "sick leave," but then leaving an unpaid balance of $50.29 of the total sum of $331.50 which was to have been deducted from his salary in equal monthly installments for the period of 3 years, beginning October 1, 1948, as aforesaid.

The heart attack suffered by the appellant on February 5, 1951, rendered him permanently and totally disabled to perform the duties of his employment from and after that date. The basis on which he was relieved of paying the $331.50 in cash at the time of his application on August 18, 1948, was that he agreed to pay this amount within three years of the effective date of the Act, so far as the City of Meridian was concerned, beginning October 1, 1948. But after he became permanently and totally disabled to perform the duties of his employment on February 5, 1951, there were no further wages to accrue from which the equal monthly installments could be deducted by the City, other than the monthly installments which were paid to him up to and including April 16, 1951, and covering the period of the leave of absence that he was entitled to on account of sickness, referred to as "sick leave." He did not apply for duty disability under Section 3652.3-13, Code 1942, until about July 25, 1953, and at which time he made his first tender of the balance of $50.29 which he should have paid prior to October 1, 1951.

Nevertheless, we are of the opinion that under Section 3652.3-07 this employee became a member of the retirement system upon the approval by the Board of his installment payment plan of making the contributions to the retirement fund, and that he would remain a member of the system until he becomes a beneficiary or dies, according to Section 3652.3-19, since he did not separate himself from the service within the meaning of that section, relating to the circumstances under which membership ceases.

The minutes of the meeting of the Board of the General Retirement System on December 21, 1953, recite that the attorney for the employee appeared before the Board and requested a duty disability retirement on account of the heart attack sustained by him because of exertion while discharging his duties as a fireman at the pump station of the water works department; that the attorney read to the Board affidavits signed by Dr. T. L. Bennett and by J. L. Patterson, chief engineer, the latter having been present at the time of the heart attack, which were filed as exhibits to his petition of July 25, 1953, showing that he was permanently and totally disabled to perform any of the duties of his employment from and after February 5, 1951; and that the check of the employee in the amount of $50.29 had been presented to the Board to pay the balance due on the $331.50, which the employee had agreed to pay within three years from October 1, 1948.

The minutes then set forth a letter from the city attorneys of September 2, 1953, addressed to the Board which quoted from an opinion of the attorney general's office of June 30, 1951, in response to an inquiry as to the status of employees generally who failed to make the payments within the three year period specified of a sum equal to 4% of the total compensation received for the four years immediately preceding the effective date of the Retirement Act in the municipality, and which opinion from the attorney general's office advised that the

municipality was without power to extend the time for the making of the contributions required beyond the three year period, having reference to Section 3652.3-07, Code 1942.

The record further discloses that the letter to the Board from the city attorneys also stated: "We further requested an opinion from the attorney general of the status of an employee who becomes eligible 'for benefits under the Retirement Act prior to the time he had completed his payments of the four per centum as required by law." The attorney general's office then advised that: "I am of the opinion that where a person becomes eligible for retirement, either by reason of duty disability or age, prior to the completion of his amortization payments on the deposit, that the Retirement Board should declare him eligible and begin his retirement payments * * * ." The Board did not declare this employee eligible and begin his retirement payments when he became disabled prior to the completion of his amortization payments as a contribution to the retirement fund. But as heretofore stated, the employee did not apply for duty disability under Section 3652.3-13 until July 25, 1953, and so far as the record shows the employee may not have known definitely prior to that time that he would never be able to again perform the duties of his employment. Most persons do not have a feeling of despair as to whether they will recover from a heart attack, at least until they are assured by a physician that it is futile to entertain such a hope.

The employee in this instance was not advised of the opinions from the attorney general's office interpreting the Act at any time prior to October 1, 1951. Nor did any of the pertinent provisions of the Act impose upon the Board or the city the duty of notifying him that according to the ruling of the attorney general's office if he became disabled before completing the payment of his contributions he would nevertheless have to make the remaining payments as scheduled.

Then, too, assuming that the employee entertained a hope of becoming able to return to his work, it may be that he failed to apply for the duty disability earlier because of the fact that under Section 3652.3-19 his membership in the retirement system would cease ''should he become a beneficiary * * *.'' At any rate, on the basis of the conclusion of the city attorneys, as confirmed by the opinions of the attorney general's office, they advised the Board that the employee was not entitled to receive any benefits from the retirement system, and that his rights were limited to a request for refund of 75% of the amount paid by him to the retirement system.

Finally, the minutes of the Board meeting of December 21, 1953, recite that after some discussion, and upon motion duly made and seconded, the Board voted 6 to 1 to deny ''with regrets'' the petition of the employee for duty disability, and that the secretary was directed to return his check in the amount of $50.29; that the decision of the Board was based upon the opinions of the attorney general's office hereinbefore referred to.

■■ ■ At this hearing before the Board of the General Retirement System of Meridian, no issue was raised by the Board or the City as to the correctness of the allegations of the employee's petition for duty disability in respect to his having been totally and permanently disabled to work from and after February 5, 1951, the decision of the Board denying his petition being based solely upon the fact that he had not fully paid the sum of $331.50 within three years from October 1, 1948. If the Board had intended to make the contention that the allegations of the petition and of the affidavits of Dr. Bennett and its chief engineer J. L. Patterson as to the total and permanent disability of the employee being untrue, the Board should have raised the question at the hearing on December 21, 1953.

Section 3652.3-22, Code of 1942, provides for an appeal to the chancery court from any decision of the Board by any member of the retirement system entitled

to the benefits under the Act. The statute does not by any of its terms provide for a hearing *de novo* in the chancery court, but no point is made in regard thereto on this appeal. At any rate, when the cause came on to be heard in the chancery court on March 25, 1954, the city attorney who appeared at that hearing dictated into the record that the appellee Board of General Retirement System of Meridian "denies that the petitioner was disabled as a natural and probable result of any injuries sustained * * * as an employee of the City of Meridian, * * * ." No proof was offered in support of this denial. Nor was the employee permitted by the court, upon objection of the employer, to establish the fact of permanent and total disability. The city attorney further dictated into the record that the Board "by way of plea in bar, states that the petitioner and appellant, W. L. Smith, became ineligible as a member of the retirement system of the City of Meridian on October 1, 1951, in that the petitioner and appellant, W. L. Smith, failed to complete his payments to the retirement system within three years * * * as is required by law; * * * ."

At the hearing in the chancery court the appellee assumed the burden in the outset of introducing testimony to maintain the issues on its part, by the introduction of oral testimony and the proceedings that had transpired before the Board from which the appeal had been taken. The oral testimony was confined to the making of proof to the effect that the employee had not fulfilled his written offer to pay the full amount of the $331.50 in deductions of equal monthly installments from his salary for the three years beginning October 1, 1948.

The chancellor in his opinion rendered at the conclusion of the hearing, and in his decree dismissing the petition of the employee for duty disability, seems to have based his decision primarily upon the failure of the employee to make application for the retirement benefits "while in the service of the employer," which in his opin-

ion expired at the end of his sick leave on April 16, 1951. The chancellor was also of the opinion that the employee should have completed his monthly installment payments prior to October 1, 1951.

The language of Section 3652.3-13, Code 1942, is somewhat confusing in that in the outset it provides "upon application of a member in service of the employer, while in the service of the employer, any member who has become totally and permanently incapacitated for duty as the natural and proximate result of the actual performance of the duty of the employer (evidently meaning employee), without willful negligence on his part, may be retired by the board on a duty disability retirement allowance effective 30 days after the filing of an application in writing with the Board, * * * ." This section further provides for the examination of the employee by a physician or physicians selected by the board, etc.

But we are of the opinion that the Board waived its right to have the employee examined by a physician of its own selection by its inaction in that regard throughout the period of the illness of the employee up to and including the date of the hearing before the Board and the trial in the chancery court. Moreover, the theory upon which the appellee presented its evidence in the chancery court, and the theory upon which the case was tried there, was that the only issue before the Board and the court was whether or not the employee was barred by the three year provision as a statute of limitation. The appellee is bound by the theory upon which the case was tried, and by inducing the court not to permit the employee to introduce any evidence as to his permanent and total disability, upon the theory that that issue was not involved.

We have concluded after a careful study of Section 3652.3-13 in connection with all other provisions of the Act, and particularly Section 3652.3-08, that the clause "while in the service of the employer" modifies the next

succeeding clause of Section 3652.3-13 as to when the employee becomes totally and permanently incapacitated for duty as the natural and proximate result of the actual performance of his duty, and does not require the filing of the application for duty disability before his service as an employee has terminated, and since such statutes are remedial in their nature, and are to be liberally and broadly construed, and liberally applied, in favor of applicants, or those intended to be benefitted thereby, as a matter of sound public policy, so as to carry out, and properly recognize, their beneficent policy and purpose, and to confer the benefits intended, any doubts as to the proper construction of the statutes should be resolved in favor of the claimant. ▮▮ ▮ The employee is not limited in the matter of filing his application for duty disability to filing the same while in the service of the employer. There is no point in the employee being required to file an application for duty disability on the ground of total and permanent disability while he is still in the service of the employer, although under sick leave, as long as he may be hopeful of becoming able to return to his work.

▮▮ ▮ Moreover, if the employee had paid the 4% of his compensation received from the employer for the four years immediately preceding the effective date of the Act in cash at the time he filed his application to come under the retirement system, it could not be contended that there is any statute of limitation in the Act within which he should file his application for duty disability. Nor do we think that he was required to file his application for duty disability while in the service of the employer where he elects to have this 4% deducted in equal monthly installments from his salary for three years after the effective date of the Act. When his 60 days sick leave expired after he became permanently and totally disabled on February 5, 1951, he had no further salary from which the installments could be deducted monthly.

When he filed his application on July 25, 1953, and tendered his check for the remaining $50.29, he offered in his petition to pay the same in cash if the check was not acceptable.

Assuming that he would have kept his tender good, if his check had not been returned to him, we think that when the case reached the chancery court he had offered to do equity, and was still willing to do equity, that court could have granted his petition for duty disability and with the right on the part of the Board as a matter of equity to deduct from the duty disability allowance such sum as he then owed to the retirement fund.

We are, therefore, of the opinion that the cause should be reversed and that the liability in his favor should be determined here, and that the cause should be remanded for further proceedings in order that he may be allowed the duty disability effective 30 days after the filing of his application in writing with the Board on July 25, 1953, as contemplated by Section 3652.3-13, Code 1942, on the assumption that he is still willing to do equity by consenting to the $50.29 being deducted from such duty diability allowances. The cause will, therefore, be reversed and remanded for further proceedings consistent with the views hereinbefore expressed. The result is that the employee will lose his duty disability allowance prior to the expiration of 30 days after July 25, 1953, which he would have been entitled to at the expiration of his sick leave if he had then applied therefor.

Reversed and judgment here for appellant on liability, and cause remanded.

*Lee, Arrington, Ethridge* and *Gillespie, JJ.,* concur.

ON SUGGESTION OF ERROR

ARRINGTON, J.

It is first suggested that the Court was in error in saying in the former opinion that the tender of $50.29

of the balance due on the contribution required of the appellant to the Retirement System was made on July 25, 1953, whereas it was not actually made until December 11, 1953, when his petition of July, 1953 was presented to the Retirement Board. This discrepancy as to the date when the tender was made is, in our opinion, wholly immaterial. The employee had the right to make the tender at the hearing. ██ ██ Ordinarily whether or not a tender is made with a pleading or the making of the same is delayed until the hearing merely affects the date to which a petitioner or complainant is required to pay the accrued costs. This is true in courts of general jurisdiction, and should be true in a proceeding before an administrative board in the absence of a statutory requirement that the tender should be made in the petition or other original pleading.

██ ██ It is next contended that we were in error in saying that when the case reached the chancery court the proceedings disclosed that the employee had offered to do equity. We adhere to the position taken in the former opinion in regard to this issue.

It is next argued that we were in error in holding that Section 3652.3-13, Code of 1942, in employing the words "while in the service of employer" pertains to the time that the employee must have sustained his injury, and does not require that he must necessarily file his application for duty disability "while in the service of employer," as held by the chancellor. We thoroughly considered the question of how the confusing language in this statute should be interpreted, and we are still of the opinion that our construction thereof was correct.

Finally, it is urged that we were in error in determining here the issue of the appellee's liability as for an injury occurring during the course of his employment, and in determining in favor of the employee the issue of whether or not he was totally and permanently disabled from following any gainful employment at all times after he sustained the injuries in the performance

of his work. It is because of this suggested error that we are writing this response to the suggestion of error in its entirety.

The suggestion of error in the respect last above mentioned raises the question of whether a case originating before an administrative commission, performing quasi judicial functions, may be tried by piecemeal instead of the case being presented in full before such board or commission prior to an appeal either to the chancery or circuit courts. It is recognized that in courts of general jurisdiction a plea to the effect that a claimant is not eligible for the benefits applied for may be tried as a plea in bar preliminarily to the hearing on the merits, and if the same should be sustained, such action would dispense with the necessity of hearing the case on the merits by the court.

However, this case originated before the Board of the General Retirement System of Meridian, and at the hearing before that Board, the employee alleged in his petition for duty disability that he was injured in the course of his employment, while performing the duties thereof, and that he was continuously confined to his home for at least a year following the injury on February 5, 1951; and further, that he had ''hoped and continued to hope that he would be able to recover from his disability to the extent that he could return to his work . . . believing at all times that if he could so return to his work that his job would be available to him, but that he is now definitely informed by his physician that he will never again be able to engage in any gainful occupation for compensation or profit, and that resorting to any substantial physical exertion would endanger his life.''

The allegations of the petition were supported by an affidavit made as an exhibit thereto of Dr. T. L. Bennett, who stated therein, among other things, that ''Mr. Smith has been totally disabled since this attack (meaning the heart attack sustained from exertion while at work in the performance of his duties) and his disabilities are

such as will render him permanently disabled for gainful labor.'' The petition was further supported by the affidavit of his foreman as to the fact that he sustained his injuries while in the performance of his duties.

The appellee, Board of General Retirement System of Meridian, entered an order denying the petition for duty disability ''with regrets,'' and ordered that the check for $50.29 presented by the employee's attorney as a tender of the balance due on his contribution to the retirement system be returned to the employee through his attorney, but no question was raised as to the sufficiency of the tender by check instead of cash, since the attorney had offered to make the tender in cash in the event the check was not acceptable. The Board denied the claim, ''with regrets,'' on the sole basis of an opinion received from the Attorney General's Office, which was concurred in by the City Attorney, as to the ineligibility of the employee to receive any benefits under the retirement system because of his failure to have completed the payment of his contribution to the system in monthly installments prior to the expiration of three years after he became a member of the system, and not because of any contention that he was not injured in the performance of his duties as an employee of the city, or that he was not totally and permanently disabled. No issue whatsoever on either of those grounds was raised at the hearing before the retirement board.

For the first time when the case reached the chancery court and was to be tried on testimony instead of on the record made before the appellee Board did the appellee here make any denial of the fact that the employee was totally and permanently disabled as the natural and proximate result of the injury which he had sustained, and did not offer any proof in support of that contention in the chancery court, and on objections, prevented the employee from doing so.

 ██ The employer had the right to have had the employee examined by physicians of its own selection un-

der the applicable statute, but had failed to do so. It was the duty first of the Board of the General Retirement System to pass on the question of whether or not the employee had been injured in the performance of his duties and that as a result thereof he had become totally and permanently disabled. We are still of the opinion that the board, by failing to have the employee examined by physicians of its own selection and by its failure to raise any issue prior to the appeal to the chancery court as to whether or not the employee had been injured and had become totally and permanently disabled as alleged in his petition, has waived its right to further deprive this employee of the duty disability benefits under the retirement system by going back and raising and trying this issue, as contended for the first time on this suggestion of error.

In cases before the Workmen's Compensation Commission, an administrative body, the question is frequently raised as to whether a claimant is eligible to claim the benefits provided for under the Workmen's Compensation Act, the issue depending upon whether or not the claimant is the wife, lawful widow, or dependent child of a deceased employee within the meaning of the act. The Workmen's Compensation Commission not only hears the plea of ineligibility on the part of such claimant, but also hears the proof as to whether or not the deceased employee's death arose out of and in the course of his employment; and that Commission determines, of course, whether or not the employee is actually dead. If the employer and the insurance carrier should be permitted to first litigate all the way to this Court the issue as to the eligibility of the claimant to receive the benefits of the Workmen's Compensation Act as the surviving wife, widow, or dependent child of the employee, and then go back and litigate the question of whether the employee came to his death while about the duties of his employment, as a result thereof, they could

unduly postpone the payment of any benefits to the dependents of a deceased employee.

Aside from the fact that the court's docket is too crowded to permit trial and appeals by piecemeal from the action of administrative bodies, it is also unfair to thus postpone the receipt of benefits by persons entitled thereto, either under the Workmen's Compensation Act or under any retirement system. We think the suggestion of error should be overruled.

Suggestion of error overruled.

*McGehee, C. J.,* and *Lee, Ethridge* and *Gillespie, JJ.,* concur.